# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                    **Case No. 09-CR-10**

**GERALD MOORE**
    **Defendant.**

## SENTENCING MEMORANDUM

The government charged defendant Gerald Moore, along with his cousin Eric Moore, with armed bank robbery. Pursuant to an agreement with the government, defendant, who acted as the driver during the offense, pleaded guilty to accessory after the fact under 18 U.S.C. § 3, and I set the case for sentencing.

In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then determine the final sentence on consideration of all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). The parties agreed to a base offense level of 14 under U.S.S.G. §§ 2X3.1(a)(1) & 2B3.1(a), with a 2 level enhancement because defendant stole the property of a financial institution, § 2B3.1(b)(1), a 3 level enhancement because Eric Moore brandished a dangerous weapon during the offense, § 2B3.1(b)(2), a 2 level enhancement because defendant recklessly endangered others in fleeing from the police, § 3C1.2, and a 3 level reduction for acceptance of responsibility based on his plea, § 3E1.1, for a final level of 18. Coupled with defendant's criminal history category of IV, level 18 produces an imprisonment range of 41-51 months. I found these calculations correct and adopted them accordingly.

Had he pleaded guilty to the charge in the indictment, defendant likely would have faced a sentencing guideline range of 188-235 months as a career offender under U.S.S.G. § 4B1.1. In apparent recognition of this fact, the parties in the plea agreement agreed to recommend a sentence above the guideline range. Specifically, defendant requested a sentence of 60 months, the government 120 months. For the reasons that follow, I found a sentence of 84 months sufficient but not greater than necessary to satisfy the purposes of sentencing under § 3553(a).

## I. SECTION 3553(a) FACTORS

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that

2

is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2): just punishment, deterrence, protection of the public and rehabilitation of the defendant.

While the district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), it must consider the parties' arguments and determine an appropriate sentence without any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). The court is free to impose a sentence above or below the guideline range so long as it adequately sets forth reasons, consistent with the § 3553(a) factors, for finding the sentence appropriate for the particular defendant. United States v. McKinney, 543 F.3d 911, 913-14 (7th Cir. 2008) (citing United States v. Castro-Juarez, 425 F.3d 430, 436 (7th Cir. 2005)).

## II. DISCUSSION

### A. The Offense

On December 15, 2008, Eric Moore robbed the Equitable Bank in Germantown, Wisconsin. He entered the bank wearing a fake beard, displayed what appeared to be a dark, semi-automatic handgun (it was actually a BB gun), and ordered a teller to give him money. She turned over $972 from her teller drawer. Defendant acted as the driver, transporting Eric to and from the bank.

A witness outside the bank got defendant's license plate number, and police quickly located the vehicle, but defendant fled, driving through numerous stop signs and red lights. Eventually, he crashed into a snow bank, at which point Eric Moore fled on foot. Defendant

3

put the car into reverse and backed toward a police squad, then continued to flee. The pursuit covered fifteen miles and lasted twenty minutes before defendant finally stopped and was taken into custody.

Police arrested Eric a few weeks later, and he indicated that robbing the bank was defendant's idea. He stated that defendant provided the disguise and the gun, and advised him on the technique for robbing the bank. He said that defendant asked him to be his "legs" in committing the crime.

Defendant denied Eric's version, but he presented no evidence in support of his contentions. A defendant cannot dispute facts in a pre-sentence report by simply denying their truth; instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question. See United States v. Mustread, 42 F.3d 1097, 1101-02 (7th Cir. 1994). Otherwise, the court may rely entirely on the report. See United States v. Taylor, 72 F.3d 533, 547 (7th Cir. 1995).

I found Eric's statement that the robbery was defendant's idea, and that defendant provided the gun and the beard, credible. First, Eric's version was buttressed by a comparison of their records – defendant had a long record of robberies, including bank robberies, about which he bragged, while Eric had no such record. Second, Eric's version was supported by a statement from defendant's niece, with whom defendant lived at the time of the robbery, that she found a receipt in their residence for a costume beard from a party store, dated a few days before the robbery. This was strong evidence that defendant obtained and provided the disguise, which undercut his claim that Eric robbed the bank on his own and he learned of it only after Eric exited the bank.

4

**B. The Defendant**

As alluded to above, at age sixty-six, defendant had lengthy record for similar conduct; this offense constituted his fifth robbery conviction. He was convicted of robbery in Ohio state court in 1976 and again in 1979. He was then convicted of bank robbery in this district court in 1982. Sentenced to 15 years in prison for that case, he was paroled after about 7 but then revoked for new criminal conduct, namely passing bad checks. He picked up three convictions for that offense in 1992 and 1993. In 1996, he was again convicted of bank robbery in this district, receiving a sentence of 156 months. He also picked up a cocaine possession case in 1996. He was on supervised release for the 1996 bank robbery when he committed the instant offense, leading to revocation.

The pre-sentence report discussed some past substance abuse, but nothing recent. All of his screens during his latest period of supervision were negative. Defendant graduated high school and took some college classes, showing some early promise, but he had little work record. He had been in prison much of his life and seemed to be a career robber. Defendant seemed estranged from much of his family, including his son. His niece blamed him for what happened to Eric in this case.

**C. The Sentence**

Pursuant to the plea agreement, which spared defendant a possible career offender designation and a much higher guideline range, defendant recommended 60 months and the government 120, to run concurrent with his supervised release revocation sentence.

Under all the circumstances, I found a sentence of 84 months sufficient but not greater than necessary. Defendant's record demonstrated that only prison could protect the public

5

from further robberies. He was not deterred by even lengthy sentences or by federal supervision. Although defendant's role in this particular crime was to drive, he did appear to be the instigator and planner. Further, although he provided Eric with a fake gun, it appeared real to the frightened tellers. Finally, defendant seriously endangered the police and the public during his flight. Therefore, a lengthy sentence, one above the range, was necessary to provide just punishment, deter and protect the public.[1] See, e.g., United States v. Eric Jackson, 576 F.3d 465, 470 (7th Cir. 2009) (affirming above-guideline sentence where the defendant had been convicted of similar offenses on multiple occasions and had not adjusted well to supervision); United States v. Codell Jackson, 547 F.3d 786, 793 (7th Cir. 2008) (affirming above-guideline sentence based on the nature of the defendant's prior convictions, including an offense similar to the instant offense), cert. denied, 129 S. Ct. 1538 (2009); United States v. McIntyre, 531 F.3d 481, 483-84 (7th Cir. 2008) (affirming sentence 100 months above the guideline range in a bank robbery case, based in part on un-scored prior offenses and a quirk in state law that permitted the defendant to avoid a career offender designation); United States v. Smith, 505 F.3d 463, 470-71 (6th Cir. 2007) (affirming sentence of 132 months for a bank robber, despite a guideline range of 46-57 months, where the defendant fled from the police, had a bad prior record, and was on federal supervision at the time).

In urging a sentence of 5 years, defendant noted his age, and pointed to the background

---

[1] This sentence exceeded the guideline range, but was barely ½ the statutory maximum of 12 ½ years. See 18 U.S.C. § 3 (providing that the maximum prison sentence for an accessory after the fact is ½ the maximum for the underlying crime); 18 U.S.C. § 2113(d) (providing a maximum penalty of 25 years in prison for armed bank robbery). Further, as discussed above, the guideline range was significantly lower than it otherwise would have been due to the amended charge to which defendant entered his plea. This sentence was about ½ the low end of the career offender guideline range defendant could have faced.

6

commentary to U.S.S.G. § 4A1.3, suggesting an upward departure for younger defendants who had received lenient treatment yet continued to offend. However, that is not the only type of situation in which the court might find a criminal history category to understate the defendant's risk. Defendant's record in this case revealed a consistent track record of committing a certain type of crime – armed robberies – with no indication that he planned to stop, even after he reached the normal retirement age and even while on supervised release for a previous robbery. As the Commission notes in U.S.S.G. § 4A1.2 cmt. n.8, a sentence for similar conduct imposed outside the 15 and 10 year time periods may be considered in imposing a sentence above the guideline range. Here, defendant had two un-scored armed robberies.[2]

Defendant argued that the instant offense was different from his prior robberies. Defendant might be getting too old to do all of the leg work himself, but that did not mean that he did not present a serious risk, particularly with accomplices. Defendant also failed to address the danger he created with his reckless flight. Defendant suggested that strict conditions of supervision, including home confinement or restrictions on driving, could protect the public. But defendant was on supervised release when he committed this crime, and I failed to see how supervision conditions could prevent further crimes.

Defendant also referenced a report from Dr. Bronson Levin, who examined defendant and concluded that he was a narcissist, who made himself seem more crafty than he really was. However, my primary concern was not with how many banks defendant had bragged about robbing, it was the number of actual robberies he committed or assisted. Dr. Levin found

---

[2]Although the court need not follow § 4A1.3 (or any other guideline departure provision) in imposing a non-guideline sentence, see Codell Jackson, 547 F.3d at 793, it may look to such provisions for guidance in exercising discretion under § 3553(a), see United States v. Powell, 576 F.3d 482, 499 (7th Cir. 2009).

it hard to figure why defendant, living a limited lifestyle on social security, would re-involve himself in this conduct; perhaps he fell back on a habit. Defendant did not provide Dr. Levin's report, so it was hard to know what to make of this statement. Whatever the reason, defendant continued to commit this type of crime. Advanced age is usually a good predictor of reduced risk of recidivism, but defendant demonstrated otherwise.

I declined to impose a sentence of 10 years, as the government requested. I found such a sentence a bit more than necessary under all the circumstances, including defendant's specific role in the crime and the guidelines' recommendation. Ten years could be a life sentence for a man defendant's age; I left some hope for release. See United States v. Wurzinger, 467 F.3d 649, 652 (7th Cir. 2006) ("There is a worthy tradition that death in prison is not to be ordered lightly, and the probability that a convict will not live out his sentence should certainly give pause to a sentencing court."). Perhaps he would find fewer potential accomplices when he got out.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 84 months, to run concurrently with his sentence after revocation. The revocation was based on the offense conduct in this case, making such a sentence reasonable. See United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001). On release, I ordered him to serve three years of supervised release, with conditions including regular restitution payments and financial disclosure. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 5th day of November, 2009.
/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

8

Case 2:09-cr-00010-LA   Filed 11/05/09   Page 8 of 8   Document 52